# UNITED STATES DISTRICT COURT
for the
Eastern District of North Carolina

**FILED**
JAN 27 2016
JULIE RICHARDS JOHNSTON, CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. 5:16-MJ-1088-RN
USE OF A CELL-SITE SIMULATOR TO LOCATE THE )
CELLULAR DEVICE ASSIGNED CALL NUMBER )
(919) 638-4636, IMSI 310260419438195 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE SEARCH WARRANT AFFIDAVIT ATTACHMENT A

located in the _____Eastern_____ District of _____North Carolina_____, there is now concealed *(identify the person or describe the property to be seized)*:

SEE SEARCH WARRANT AFFIDAVIT ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841 and 846 | Manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance and conspiracy to do the same |

The application is based on these facts:
See Affidavit in Support of an Application for a Search Warrant

☐ Continued on the attached sheet.
☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

TFO Justin Heinrich, FBI
*Printed name and title*

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means and was placed under oath.

Date: January 27, 2016
City & State: Raleigh, North Carolina

_____
Robert T. Numbers, II United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| IN THE MATTER OF THE USE OF A CELL-SITE SIMULATOR TO LOCATE THE CELLULAR DEVICE ASSIGNED CALL NUMBER (919) 638-4636, WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY 310260419438195 | Case No. 5:16-MJ-1088-RN<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, TFO Justin Heinrich, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B, to determine the location of the cellular device assigned call number (919) 638-4636, (the "Target Cellular Device"), which is described in Attachment A.

2. I am a Task Force Officer with the FBI, and have been since June, 2015. I have been a sworn law enforcement officer in the State of North Carolina since 2007. I completed the North Carolina Basic Law Enforcement Training curriculum in 2006, and graduated from the 37th SBI Special agent Academy in 2008. Since 2008, I have been employed by the North Carolina State Bureau of Investigation as a Special Agent. In this capacity, I routinely investigate violations of state and federal law including homicides, corruption, kidnappings, sexual assaults, arson, financial crimes, and drug offenses. Such investigations often require that I conduct interviews and interrogations, perform surveillance, prepare investigative reports, plan interagency

operations, analyze and synthesize intelligence, testify in court, and work with attorneys to ensure the successful prosecution of cases. I hold a Bachelor's degree from Appalachian State University in Criminal Justice with minors in both Chemistry and Psychology. In 2013, I earned a Master's degree in Criminal Justice from the University of Mississippi with a course emphasis in Homeland Security. I have received over 1200 hours of law enforcement training covering topics such as homicide investigations, child abuse investigations, financial crime investigations, drug investigations, arson investigations, crime scene investigations, evidence collection, search warrant writing, and cellular telephone analysis. I have experience in writing search warrants and court orders and have investigative experience which has resulted in felony arrests and convictions. In 2015, I was assigned to the Federal Bureau of Investigation's Raleigh/Durham Safe Streets Task Force (RDSSTF). The primary responsibility of the RDSSTF is to conduct investigations of violent offenders, criminal organizations, bank robberies, narcotics offenses, weapons offenses, and financial investigations. The RDSSTF utilizes unique, sophisticated methods to conduct investigations. These methods include, but are not limited to, physical surveillance, electronic surveillance, controlled purchases of narcotics, controlled purchases of weapons, use of Confidential Human Sources (CHS), use of Undercover Officers (UC), and obtaining court orders, subpoenas, and search warrants. I am experienced in investigating drug traffickers. I am familiar with the use of various forms of electronic surveillance as investigative tools. I have participated in investigations involving cocaine hydrochloride, cocaine base (crack), marijuana, methamphetamine, heroin, and various other controlled substances. As a law enforcement agent, I have participated in investigations involving, but not limited to, physical surveillance, undercover transactions, and execution of both state and federal search warrants. I have received training, both formal and informal, in the investigation of drug trafficking and money laundering, including,

but not limited to, advanced drug investigations courses, street level drug enforcement, and narcotics interdiction and wiretap investigations. I have received specialized training in advanced search and seizure techniques and vehicle interdiction techniques. I have also completed the Police Law Institute. Through my training, education, and work experience, I have become familiar with the manner in which drug trafficking violations are committed. Specifically, I am aware the drug traffickers frequently utilize cellular telephones to contact their source of supply, as well as other members of the drug trafficking organization (DTO) in order to facilitate the DTO's business. I have participated in numerous investigations in which cellular telephone information and location data has aided in the apprehension and conviction of members of various DTOs.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. One purpose of applying for this warrant is to determine with precision the Target Cellular Device's location. However, there is reason to believe the Target Cellular Device is currently located somewhere within this district or an adjacent district. The Target Cellular Device is known to be utilized by Mark Anthony Daye based upon monitored telephone calls during an ongoing wire intercept on (919) 491-7750, with which the Target Cellular Device has communicated. The current address for Mark Anthony Daye is unknown, however, his last known address was 3000 Bristol Creek Drive, Apartment 201, Morrisville, North Carolina. In March of 2015, Daye was the victim of a drug-related home invasion in Morrisville, North Carolina. This area is located within the Eastern District of North Carolina. Pursuant to Rule 41(b)(2), law enforcement may locate the Target Cellular Device outside the district provided the device is

3

within the district when the warrant is issued.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841 and 846 have been committed, are being committed, and will be committed by Mark Anthony Daye. There is also probable cause to believe that the location of the Target Cellular Device will constitute evidence of those criminal violations including leading to the identification of individuals who are engaged in the commission of these offenses and identifying locations where the target engages in criminal activity.

6. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. See 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. See 18 U.S.C. § 3123(b)(1).

## PROBABLE CAUSE

7. According to T-Mobile, cellular telephone number (919)638-4636 (the target cellular device) is subscribed to Mark Daye and lists his address as 1503 Virgil Road, Durham, North Carolina (although this address is listed within the cellular device's subscriber information for Daye, the last confirmed address where investigators knew Daye to reside was 3000 Bristol Creek Drive, Apartment 201, Morrisville, NC).

8. According to AT&T, (919) 491-7750 is subscribed to "D. Thompson" at 3620 Four Seasons Dr., Durham, NC, and is known to be used by Maurio Tajara Mitchell.

9. Investigators have conducted extensive record checks on Maurio Tajara Mitchell in databases available to Law Enforcement, and have been unable to locate any valid recent

4

addresses for Mitchell. Mitchell does not put utility bills, vehicles, or have apartments in his name, which is a common practice for individuals attempting to avoid Law Enforcement detection. The last known address for Mitchell was developed by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) during an investigation into the target (Individual #1) of a cocaine distribution case out of Durham, NC, who was roommates with Maurio Mitchell. Individual #1 lived with Mitchell in Cary, NC, during which time Individual #1 supplied several street level United Blood Nation gangs with cocaine base for street level distribution. Individual #1 was convicted in the Middle District of North Carolina, and is currently incarcerated in the Bureau of Prisons. The ATF was able to confirm that, in 2011 and 2012, Mitchell was living in Cary, NC with Individual #1. This is the last know location for Mitchell.

10. The FBI's RDSST has debriefed numerous Confidential Human Sources and a cooperating Federal defendant as early as 2009, in reference to Mitchell. The cooperating Federal Defendant was convicted of Federal Narcotics Violations in the Eastern District of North Carolina arising from a cocaine and heroin distribution conspiracy investigation. These interviews have revealed that Mitchell has been a source of supply of narcotics in the Raleigh/Durham area beginning at a time unknown, but at least as early as 2009. Mitchell has been documented as supplying multiple kilograms of cocaine at a time to individuals in the Raleigh/Durham area. The cooperating Federal Defendant provided information that he had previously supplied Individual #2 with at least one kilogram of cocaine base, and that Individual #2 also routinely used Maurio Mitchell as a source of supply at the kilogram level.

11. Confidential Human Source #1 has given debriefs that Individual #3 is a high level source of supply of cocaine and other controlled substances for the Raleigh/Durham area and has a direct connect in California. CHS #1 has provided information on numerous sources of supply

5

that the FBI's Raleigh Durham Safe Streets Task Force has been able to confirm as accurate and reliable information. CHS #1 is personally associated with Individual #3, and has frequent conversations with Individual #3. CHS #1 knows from these personal conversations that Individual #3 is the head of their organization in North Carolina. These debriefs indicated that Individual #3 is above Maurio Mitchell in the current cocaine distribution organization. Telephone Toll analysis confirms that Individual #3 and Mitchell are in frequent contact. In March of 2015, Individual #3 was the victim of a drug-related home invasion in Morrisville, NC. The suspects of the home invasion are documented as a group that targets higher level drug dealers. The investigation of this home invasion indicates that approximately $65,000 was taken from Individual #3 by the suspects. Individual #3 has been deceptive as to the details of the home innovation due to the money taken being drug proceeds.

12. Individual #4 is known to the Raleigh Durham Safe Streets Task Force as a mid-level cocaine and crack cocaine dealer. In 2012, the Raleigh Durham Safe Streets Task Force made several controlled purchases of crack cocaine from Individual #4. One of these purchases was for over 40 grams of crack cocaine. Individual #4 claims to make his/her income from being a rapper, and is signed by Maurio Mitchell's rap label, Faculty Entertainment. Telephone analysis confirms that Individual #4 and Maurio Mitchell are in frequent contact. A search of data bases available to law enforcement, and physical surveillance has shown that Individual #4 resides in, Cary, NC. Numerous debriefs have indicated that Individual #4 not only is signed under Maurio Mitchell in the music industry, but also supplied with cocaine by Maurio Mitchell.

13. Between August 14, 2015, and August 28, 2015, Mitchell was intercepted nine (9) times on the Target Cell Phone on a Federal Title III Wiretap operated by the Drug Enforcement Administration out of the Middle District of North Carolina. The target of the DEA Title III

6

Case 5:16-mj-01088-RN   Document 1   Filed 01/27/16   Page 7 of 17

Wiretap is Individual #5, who is also a large-scale supplier of cocaine. Your Affiant knows that the targets of the DEA Title III Wiretap recently funded and coordinated the purchase of 14 kilograms of cocaine in Houston, TX. The load vehicle was interdicted after leaving Texas, and the 14 kilograms was seized by the DEA.

14. The content of the calls intercepted on the DEA Title III Wiretap involving Mitchell show that he is using the Target Cell Phone to facilitate drug transactions. Cell-site location information, both historical and prospective, will aid the FBI RDSST in confirming the evidence obtained from the DEA Title III Wiretap, as well as gathering evidence of Mitchell's drug trafficking activities moving forward.

15. In a recorded call on August 14, 2015, Individual #5 called Mitchell and told him "turn around; I don't like that truck right there turn around and turn on the first street to the left." Based upon my training and experience, as well as other information intercepted during the course of the DEA Title III Wiretap, I believe that the context of the phone call indicates that Mitchell and Individual #5 were concerned about possible Law Enforcement presence during an attempted drug transaction. This call came an hour after an earlier call arranging a meeting.

16. On August 17, 2015, the DEA Title III Wiretap intercepted a call between Mitchell and Individual #5 discussing a potential drug transaction with a third party. Individual #5 stated: "Ain't shit out of Durham so they hit me so I hit you up." Mitchell asked, "about the truck?" Individual #5 responded "ahuh," and Mitchell asked "what they want to do they want to check it out?" Individual #5 stated, "Nah Nah they want to get it." Based on my training and experience, review of the call indicates that the speakers are using coded language to facilitate a future drug transaction with a third party. Your Affiant knows that Individual #5 had recently lost his source of supply due to the interdiction of the 14 kilograms of cocaine in Houston, TX, and he is

7

conveying to Mitchell that there were no drugs in Durham so the third party tried to get drugs from Individual #5, who in turn reached out to Mitchell. Mitchell asked if the third party wanted to check out the narcotics, but Individual #5 told him that they just want to get the drugs from him.

17. On August 26, 2015, Individual #5 called Mitchell and stated, "I was tryin to see if you could get me a little touch of something bra." Based on my training and experience, Individual #5 is requesting to buy illegal drugs, most likely cocaine, from Mitchell. Mitchell responded: "I got ya, I'm about to head to my car and Ima gonna come and bring it to ya."

18. On August 29, 2015, Individual #5 called Mitchell to discuss meeting a supplier. Individual #5 stated: "I got somebody they will bring it right here, you don't gotta do nothing and it will be a better number, like know what im saying, like they will bring them all here you just gotta cash out on them you see what Im saying." Individual #5 and Mitchell then discuss the timing of the meeting with the source, and Mitchell responds, "damn why you wanna wait so long man…I don't really got no one I fuck with like that." Based on my training and experience, I know this to mean Individual #5 has a source that has illegal drugs at a good price, and they will deliver to Mitchell.

19. On January 15, 2016, a Federal Title III Wiretap issued out of the Eastern District of North Carolina was initiated upon (919) 491-7750 to further an investigation into the drug trafficking organization (DTO) for which Mitchell works. Since that time, there have been over one thousand intercepted calls to and from this device. During these calls, monitors of the above-referenced wire intercept have recognized that Mitchell is the primary user of (919) 491-7750.

20. On January 25, 2016, at approximately 7:15 pm, a call between (919) 491-7750 and (919)638-4636 (the Target Cellular Device) was intercepted and monitored by investigators during the course of the above-referenced Title III Wiretap. Investigators recognized this call to be

8

between Maurio Mitchell and Mark Daye. The following is an excerpt of the conversation that was heard:

Mitchell: "What up Bro?"

Daye: "He texted me now and I told him we can do five in two days, right?"

Mitchell: "Um...Don't put it just like, say at least about three. You know the first day we get it we got to go out, reaching out. You know what I'm saying. You know we want put no pressure on us like, you feel me?"

Daye: "Ok, this is what text him...say four. Say four."

Mitchell: "Yeah, say something like that."

Daye: "I'm texting him now."

Based upon my training and experience, I believe this conversation to be a coded reference to a plan by both Daye and Mitchell to purchase an unknown quantity of drugs from an unknown third party within two to four days.

The following is an excerpt from later within this same monitored call:

Daye: "He texted me OK! Hold on! I'm going to tell him I'm going get with you and have a meeting."

Mitchell: "Alright!"

Daye: "Hold on a minute, bro, while I text him."

Mitchell: "Yeah, I aint hanging up!"

9

| | |
|---|---|
| Daye: | "Call in 20 minutes, conference call! I just texted him. We can call him in 20 minutes conference call, with bro to see what he say. I told you was going to call right back. Took him a minute, but he called back." |
| Mitchell: | "You know he had to go meet up with the people?" |
| Daye: | "Yea. He said ok..." |

During the above referenced portion of this call, it sounded to investigators monitoring the wire intercept as if Daye was utilizing a separate cellular telephone to send text messages to the unknown third party with whom Daye and Mitchell were attempting to arrange the above-described narcotics transaction. Investigators believed this to be the case because it sounded as if Daye was reading out the content of the text message to Mitchell as he drafted and sent them.

21. Investigators do not currently know the whereabouts or routine of Daye and are thus unable to conduct physical surveillance upon his activities. Investigators believe that real-time location information associated with cellular telephone number (919)638-4636 (the target cellular device) will enhance the efforts of investigators to conduct successful surveillance of Daye, which will further an investigation into the drug trafficking organization (DTO) of which Daye is believed to be a part of.

## MANNER OF EXECUTION

22. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a

10

Case 5:16-mj-01088-RN   Document 1   Filed 01/27/16   Page 11 of 17

cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

23. To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the Target Cellular Device or receiving signals from nearby cellular devices, including the Target Cellular Device. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the Target Cellular Device and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the Target Cellular Device and use that information to determine the Target Cellular Device's location, even if it is located inside a house, apartment, or other building.

24. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Cellular Device, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Cellular Device, and law enforcement will limit collection of information from devices other than the Target Cellular Device. To the extent that any information from a cellular device other than the Target Cellular Device is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Device from all other cellular devices.

11

## AUTHORIZATION REQUEST

25. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

26. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cellular Device would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

27. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cellular Device outside of daytime hours.

28. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

12

29. A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

Respectfully submitted,

Justin Heinrich
Task Force Officer
Federal Bureau of Investigation

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this written affidavit.
Dated: January 27, 2016

Robert T. Numbers, II
United States Magistrate Judge

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular device assigned phone number (919) 638-4636 with International Mobile Subscriber Identity 310260419438195, whose wireless provider is T-Mobile, and whose listed subscriber is Mark Daye of 1503 Virgil Road, Durham, North Carolina.

1

## ATTACHMENT B

Pursuant to an investigation of Mark Anthony Daye for a violation of 21 U.S.C. §§ 841 and 846, this Warrant authorizes the officers to whom it is directed to determine the location of the cellular device identified in Attachment A by collecting and examining:

1. radio signals emitted by the target cellular device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular device in response to radio signals sent to the cellular device by the officers;

for a period of thirty days, during all times of day and night. This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).

United States Attorney's Office. Disclosure of the affidavit would alert potential targets of the existence, scope, and details of the investigation and, therefore, would pose a risk of flight or the destruction of additional evidence, and may otherwise compromise the investigation. See Baltimore Sun Co. v. Goetz, 886 F.2d 60 (4th Cir. 1989).

WHEREFORE, the Government moves for an Order sealing the Application and Affidavit for Search Warrant, including Attachments A and B, and this Motion to Seal, until further order by this Court, except that a certified copy of the same be provided to the United States Attorney's Office and FBI.

Respectfully submitted, this 26th day of January, 2016.

JOHN STUART BRUCE
Acting United States Attorney

By: *Dena J Sims for*
LESLIE R. COOLEY
Assistant U.S. Attorney
310 New Bern Avenue, Suite 800
Raleigh, North Carolina 27601
Ph. (919) 856-4530
Fax: (919) 856-4487
E-mail: leslie.cooley@usdoj.gov
North Carolina Bar No. 33871